**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MYRON COX | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OFFICER JOSEPH THOMAS HACKETT, and | : | |
| TOWNSHIP OF RIDLEY | : | No.    05-CV-2260 |

**MEMORANDUM**

**Baylson, J.**                                                                                    **July 27, 2006**

**I.    Introduction**

Presently before this Court is a Motion for Summary Judgment, filed by Defendants

Officer Joseph Hackett ("Defendant Hackett"), and the Township of Ridley ("Defendant

Township") (collectively, "Defendants").  For the following reasons, the Defendants' Motion

will be granted.

**II.    Background**

**A.    Procedural Background**

Plaintiff Myron Cox ("Plaintiff" or "Cox") filed his original civil rights complaint on

April 7, 2005 in the Court of Common Pleas of Delaware County, Pennsylvania, which was

subsequently removed to this Court on May 12, 2005 by Defendants.  After this Court granted a

partial Motion to Dismiss filed by Defendant Ridley Township only, Cox v. Hackett, 2005 WL

1417094 (E.D. Pa. June 15, 2005) (Doc. No. 5), Plaintiff filed an Amended Complaint on June

20, 2005.  Further, on June 16, 2006 (Doc. No. 41), this court issued a memorandum and order

denying in part Plaintiff's Motion to Amend his complaint to substitute arresting Officer Richard

Herron for the previously-named John Doe Defendants.[1]  Therefore, because Count II was addressed only against the John Doe Defendants, the Court's June 16, 2006 order acted to terminate Count II, a point which Plaintiff conceded at oral argument.  Finally, Defendants filed this Motion for Summary Judgment (Doc. No. 30) on May 9, 2006 and an accompanying Statement of Undisputed Facts (Doc. No. 39) on June 19, 2006.  Oral argument was held on July 13, 2006, after which Plaintiff filed on July 21, 2006 a Supplemental Submission in Defense of the Motion for Summary Judgment (Doc. No. 50).

### B.    **Factual Background**

This action is based on Plaintiff's contention that Defendant Officer Hackett unreasonably and falsely identified Plaintiff as the individual driving a stolen vehicle, and that this false identification resulted in his arrest and prosecution without probable cause.  Further, he contends the Defendant Township and its police department had an unconstitutional custom and/or policy of issuing "be on the lookout" (or "bolo") stops.

The relevant facts are as follows.  On April 9, 2003, Defendant Hackett, a police officer employed by the Defendant Township of Ridley, received information at roll call indicating a stolen silver Nissan was located in the parking lot of the Linden Lane Apartments in Woodlyn, Pennsylvania.  Pursuant to this information, Hackett set up surveillance in a Ford Bronco in the area of the apartment complex.  Around 7:00 p.m., driving a green Jeep, Plaintiff Cox entered the apartment complex grounds, at which time both Cox and Hackett observed one another.[2]

---

[1]The motion was granted as to correcting the name of one Defendant, Thomas Hackett, to Joseph Thomas Hackett.

[2]While Plaintiff and Defendant Hackett agree they saw one another at this point (Deft. Statement of Undisputed Facts at ¶¶ 6-7; Pl.'s Resp. to Deft. Statement of Undisputed Facts at ¶¶

Hackett called in the license plates of the Jeep, as he had done for approximately three of the five or six vehicles he saw enter the complex.  Several minutes later, Hackett observed the stolen Nissan being driven out of the complex at a speed of about 15 miles per hour.  Defendant Hackett asserts he had a clear view of the driver, and believed him to be the same man he had just seen in the Jeep, Plaintiff Cox, a fact which Cox vigorously disputes.

Hackett testified that the Nissan took off at a high rate of speed, and a short vehicle chase ensued.  As the Nissan rounded a corner a few blocks away, both the driver and passenger exited the Nissan and ran away.  Officer Hackett asserts that the suspect looked back at him twice while a three minute foot chase ensued, and that in his opinion, that person was Plaintiff Cox, the same man who he saw pull up in the Jeep.  The fleeing suspect ultimately got away from Officer Hackett.

Two days later, on April 11, 2003, a "bolo" stop was issued at roll call on the green Jeep, which the police had since learned was registered to Plaintiff Cox.  The "bolo" stop was given without knowledge of who would be in the vehicle when stopped and whether the owner of the Jeep was, in fact, the individual who allegedly drove the stolen Nissan.  Officer Richard Herron learned of the "bolo" stop at roll call.  Approximately one-half hour later, he located and stopped the Jeep, which was being driven by Plaintiff.  Plaintiff was detained and transported to the police station.  This clearly constituted the "arrest" of Plaintiff Cox.

Sometime thereafter, Defendant Hackett received a phone call at home informing him

---

6-7), the distance between their vehicles, the duration of the observation, and the lighting conditions are contested by the parties.  Further, while Officer Hackett says there was one male passenger in the Jeep with Cox, Plaintiff contends that there was no male passenger and he was in the car with his two sisters.

3

that Officer Herron had stopped the green Jeep.  Upon walking into the holding area of the

station, Hackett contends he looked right at Plaintiff's face, and identified him as the driver of

the stolen Nissan.  Plaintiff was charged with receiving stolen property in addition to multiple

vehicle violations.  Defendant Hackett was not otherwise involved in detaining or arresting

Plaintiff Cox.  At the subsequent preliminary hearing, Officer Hackett testified and again

identified Plaintiff Cox as the driver, after which Plaintiff was held over for Court.  However, the

case was subsequently dropped, and an order of *nolle prosequi* was entered by the Delaware

County District Attorney's Office.

    **C.**      **Plaintiff's Claims**

      Counts I and IV of the Amended Complaint are asserted against Defendant Hackett only,

in very general terms, pursuant to 42 U.S.C. § 1983.  In Count I, as further specified at oral

argument, Plaintiff alleges that Hackett violated his Fourth Amendment right against false arrest

and false imprisonment[3] by knowingly falsely identifying Plaintiff as the driver of the stolen

silver Nissan, causing him to be arrested without probable cause, and wrongfully charged and

imprisoned.  Amended Compl. at ¶¶ 47-49.  Count IV asserts state tort claims against Officer

Hackett for false arrest, false imprisonment and battery.[4]  Id. at ¶¶ 56-59.

      [3]Plaintiff's Amended Complaint took full advantage of the liberal pleading standards of the Federal Rules of Civil Procedure, broadly alleging violations of the Fourth and Fourteenth Amendment, and failing to identify which theories he was pursuing.  However, at oral argument, Plaintiff's counsel indicated that with regard to the Fourth Amendment, Mr. Cox was only alleging against false arrest and false imprisonment.  He specifically disavowed that he was asserting a malicious prosecution claim.  Additionally, counsel withdrew the portion of Count I that asserted a violation of Plaintiff's Fourteenth Amendment rights.

      [4]As with his constitutional count, Plaintiff failed to identify which specific state tort claims he was pursuing.  At oral argument, Plaintiff's counsel asserted that Mr. Cox was only alleging false arrest, false imprisonment, and battery.

Count III, alleged against the Township of Ridley, complains that the Defendant Township had a policy, custom or practice of failing to, or providing inadequate training, supervision, and/or disciplining of its police officers with respect to investigation, identification and testifying in court.  Id. at ¶¶ 53-55.

Plaintiff seeks compensatory damages for each count, plus interest, costs, damages and attorney's fees as allowed by law. Id. at 20-21.

### III.   Parties Contentions on Summary Judgment

#### A.   Defendants

Defendants urge first that the claims against Officer Hackett can not survive summary judgment.  Regarding the civil rights claim under § 1983 (Count I), Defendant Hackett argues that Plaintiff has not produced a scintilla of evidence supporting his charge that Officer Hackett willfully made a false identification, and in any event, he is entitled to qualified immunity. Regarding the state law claims in Count IV, Hackett contends Count IV is barred by the statute of limitations as well as by immunity provisions set forth in the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA" or "the Act"), 42 P.S. § 8541 et seq.  Finally, as to the claim against the Defendant Township (Count III), Defendants urge that Plaintiff simply has not identified any facts showing that the police department maintained a policy or custom that caused any of its employees to violate Plaintiff's constitutional rights, as he must to survive summary judgment.

#### B.   Plaintiff

Plaintiff counters that for his Fourth Amendment claim, motive is irrelevant and he need only show that there is a triable issue of fact as to whether the identification was objectively reasonable, which he urges it was not.  Likewise, because it was impossible for Officer Hackett

to reasonably identify him, Plaintiff also argues that Officer Hackett is not entitled to qualified immunity on his § 1983 claims.  Additionally, he argues that the state law claims in Count IV against Officer Hackett are not barred by the statute of limitations, as the allegations "relate back" to the original complaint pursuant to F.R. Civ. P. 15(c).  Moreover, he argues that the immunity provisions of the PSTCA do not apply, as malicious and/or willful misconduct is specifically excluded under the Act, and Defendant Hackett's motivation is *per se* a question of disputed fact.

Regarding his civil rights claims against the Defendant Township (Count III), Plaintiff urges he has identified a policy or practice; namely, the Township's practice of issuing "bolo" stops is patently unconstitutional.

## IV.   Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  F.R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular

issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." F.R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## V.    Discussion

### A.    *Monell* Claim Against the Defendant Township (Count III)

To establish a violation of 42 U.S.C. § 1983 by a municipality, a plaintiff must show that the alleged misconduct was caused by an official government custom or policy. Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91, 694 (1978). Municipal custom or policy can be demonstrated either by reference to express, codified policy or by evidence that a particular practice, although not authorized by law, is so permanent and well-settled that it constitutes law. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Further, Plaintiff must demonstrate causation, as a municipality can be liable under § 1983 only where its policies are "the 'moving force' behind the injury alleged." Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (quoting Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997). If, as here, the policy or custom does not facially violate federal law, causation can be established only by showing that "the municipal action was taken with 'deliberate

indifference' to its known or obvious consequences." Id.

Additionally, for liability to attach under a failure to train theory, Defendants' failure to train its employees must "reflect a 'deliberate' or 'conscious' choice by [the] municipality" such that one could call it a policy or custom.  City of Canton v. Harris, 489 U.S. 378, 388-89 (1989); Grazier v. City of Phila., 328 F.3d 120, 124 (3d Cir. 2003).  The need for training must be so obvious that the policymaker's failure to do so amounts to deliberate indifference. Id.; Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001).  Ordinarily, this can be established only where there is a pattern of violations. Berg, 219 F.3d at 276.

Defendants urge that Plaintiff has not satisfied his burden under Monell, failing to identify any facts showing that the police department maintained a policy or custom that caused any of its employees to violate Plaintiff's constitutional rights.

Count III of the complaint alleges that the Defendant Township had a policy, custom or practice of failing to, or inadequately, training, supervising and/or disciplining, police officers with respect to: "(a) veracity in providing information . . . to fellow officers during a criminal investigation; (b) veracity in testifying in Court proceedings; (c) identifying suspects and accusing them of crimes." Amended Compl. at ¶ 54.   Specifically, Cox now contends that the Township's police department has an established practice of issuing "bolo" stops for specific vehicles and then contemporaneously arresting the driver at the time of the stop.  This policy, Plaintiff maintains, because it encourages arrest before knowing whether the driver is the previously-identified suspect, caused his unlawful arrest and incarceration and is patently unconstitutional.

The Court finds that there is no triable issue as to whether Defendant Township may be

8

liable under <u>Monell</u>.  As noted by Defendants, Plaintiff failed to explore thoroughly this issue on

discovery, and the record does not sufficiently establish that bolo stops — at least as defined by

Plaintiff — are a consistent practice.  The Court has thoroughly reviewed the deposition

testimony of Officers Hackett, Herron, and Dougherty, Detective Turner, and Captain Rowley,

and while there are oblique references to the "bolo" stop in *this* case, there is not testimony of the

type cited in <u>Berg</u> where a Township supervisor identifies the alleged unconstitutional conduct

and confirms it was an established and predictable practice.  See Pl. Ex., Dep. of Officer Herron,

at 11:11-12:13; Pl. Ex., Dep. of Det. Turner, at 21:21-23:3; Deft.'s Ex. F, Dep. of Officer

Hackett, at 48.  Police may routinely exchange information about crimes at roll call and, based on

that information, stop and investigate a vehicle, which certainly does not rise to a constitutional

violation.[5]  Critically, the record is devoid of any confirmation that the Defendant police

department had a policy or practice of contemporaneously arresting the driver at the scene of a

"bolo" stop without any independent investigation and verification that the person being arrested

is the same suspect the department is looking for, as Plaintiff alleges happened in his case.[6]  In

---

[5]<u>See</u> Deft.'s Ex. F, Dep. of Officer Hackett, at 48 ("prior to leaving my shift, . . . I put information on the roll call sheet that we exchange information with, that we were looking for a dark green Jeep. . . "); Pl. Ex., Dep. of Officer Dougherty, at 13-14 (defining a "bolo" stop as "a county be on the look out.  That's what the acronym stands for.").

[6]An Officer James Dougherty, in answering a question regarding whether "a BOLO on an individual . . . . give[s] him] the right to arrest that individual," did testify that "yes, because usually on that BOLO is stop and detain, and investigate, identify . . . I would definitely hold someone based on a BOLO."  Pl. Ex., Dep. of Officer Dougherty, at 14:6-19.  A Captain Charles Howley, who is currently a captain with the Ridley Police Department, but at the time was only the lieutenant in charge of the Detective Bureau and was otherwise uninvolved in Cox' case, testified that when you put a "bolo" stop on a vehicle, "you stop the vehicle, you get all their information, you bring them into the station for investigative purposes."  Pl. Ex., Dep. of Captain Howley, at 13:7-9.  However, neither officer's testimony establishes a procedure or practice of arresting without verification.  Quite the contrary, both testified that the purpose of a "bolo" is

sum, Plaintiff has not satisfied his burden under <u>Monell</u>, failing to identify any facts showing that the police department maintained a policy or custom that caused any of its employees to violate Plaintiff's constitutional rights.[7]  Thus, liability may not be imposed on the Defendant Township as a matter of law.

**B.     Claims Against Defendant Hackett**

**1.     Civil Rights Claim (Count I)**

In Count I, Plaintiff asserts his Fourth Amendment rights against false arrest and false imprisonment were violated by Officer Hackett.[8]   Defendant Hackett asserts summary judgment is appropriate for two reasons: (1) Plaintiff has failed to proffer facts to support his contention that Officer Hackett willfully falsely identified him, and (2) he is shielded from liability pursuant to the doctrine of qualified immunity.  We address each in turn.

**a.     Plaintiff's Required Showing**

The threshold issue is what showing Plaintiff must make in order for his Fourth Amendment claim to survive summary judgment.  Defendants contend that Cox must show that

_____

specifically to *permit investigation* and identification of the person driving the vehicle prior to arrest.  Howley specifically said that when detained for investigative purposes, a suspect would not be kept in a cell or read his rights, "because they're not charged with anything yet."  <u>Id.</u> at 14:16-15:3.  Further, neither was a supervisor who could represent for the entire department that at the time of the incident, that arrests concurrent with bolo stops were an established and predictable practice.

[7]At most, a "bolo" is a car stop, which is authorized on reasonable suspicion, a lesser showing than probable cause.  <u>Alabama v. White</u>, 456 U.S. 325 (1990).  There is no evidence that a "bolo" necessarily results in an arrest without probable cause.

[8]While the Amended Complaint broadly alleges violations of the Fourth and Fourteenth Amendment, Plaintiff's counsel at oral argument indicated that he was only pursuing false arrest and false imprisonment under the Fourth Amendment, and withdrawing the Fourteenth Amendment assertion.

Hackett *willfully* falsely identified him, that Plaintiff has discovered no facts supporting this contention, and the evidence only supports the conclusion that Officer Hackett acted with the good faith and reasonable belief that the person he identified was the person who committed the offense.  Plaintiff counters that motive is irrelevant to his false arrest/imprisonment claim, which are the only theories he pursues under the Fourth Amendment, and merely requires a showing that Officer Hackett's actions could be viewed by a jury as objectively unreasonable.[9]

False arrest is one made "without probable cause."  The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention, where such detention is unlawful if it is the consequence of a false arrest.  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).  Thus, "the proper [initial] inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."  Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988).  Probable cause, in turn, exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003).[10]

---

[9]Although he argues motive is irrelevant, Cox originally suggested Officer Hackett may have falsely identified him because of racism or embarrassment at having the lost the suspect during the April 9, 2003 chase, but admits he "can only speculate" as to these reasons.  Pl.'s Resp. to Deft's M. for Summary Judgment, at 10.  At oral argument, Plaintiff's counsel specifically disclaimed any reliance on racial discrimination.

[10]So long as the identification was objectively reasonable — e.g. it was made with probable cause — even if it was mistaken and this constituted negligent conduct on Officer Hackett's part, Defendants correctly note that this would be insufficient to establish a section

As probable cause is an objective inquiry, Plaintiff is correct that improper motive or subjective intent of the officer is irrelevant to whether his Fourth Amendment claim should survive summary judgment.  Whren v. United States, 517 U.S. 806, 813 (1996) ("subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); Marasco, 318 F.3d at 514 ("improper motive . . . is irrelevant" to probable cause inquiry).  Therefore, we next consider whether a triable issue of fact exists regarding the objective reasonableness of Officer Hackett's identification of Cox.

Although false arrest and false imprisonment are "nearly identical claims" that are "generally analyzed together," Brockington v. Phila., 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005) (citing Gagliardi v. Lynn, 285 A.2d 109 (Pa. 1971)), in this case, it is important to divide up the analysis between the claims.  It is clear only Officer Herron actually arrested Plaintiff Cox, which resulted in his being brought to the police station where he was identified by Officer Hackett.  Because Officer Herron is not a party defendant in this case, and there is no evidence that Hackett participated in the arrest, the Court concludes that there is no grounds to continue a false arrest claim against Officer Hackett.  See Colbert v. Angstatd, 169 F. Supp. 2d 352, 359 (E.D. Pa. 2001) (holding that an officer who did not arrest the plaintiff cannot be charged with false arrest).  While the case submitted by Plaintiff in his Supplemental Submission in Defense of the Motion for Summary Judgment, Patton v. Vucinic, 167 A. 450, 451 (Pa. Super. 1933),

---

1983 claim.  Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1144 (3d Cir. 1991) (state mental hospital's failure to increase supervision of mentally retarded adult resident or to isolate resident from staff member prior to suspected sexual assault on resident did not transcend simple negligence and was not actionable under § 1983).  See also Williams v. Borough of West Chester, 891 F.2d 458, 467 n.4 (3d Cir. 1989); Davidson v. O'Lone, 752 F.2d 817, 828-29 (3d Cir. 1984).

indirectly suggests that someone other than an arresting officer — there, a woman who said the plaintiff stole her father's car — can be liable for false arrest, the facts in that case are significantly different.  In Patton, the court noted that the defendant specifically directed police to arrest the plaintiff – that is, the court's reasoning suggests it was willing to entertain the false arrest claim against her only because her conduct actually resulted in the arrest of the plaintiff. See also Mack v. Town of Wallkill, 253 F. Supp. 2d 553, 558 (non-arresting officer directly involved in the arrest of a plaintiff could be liable for false arrest).  In contrast, here, Officer Hackett did not direct anyone to arrest Plaintiff and was not involved in arresting Plaintiff; he merely provided information to his department that the driver of the green Jeep was also seen driving the stolen Nissan.  This clearly gave Officer Herron probable cause to stop the green Jeep and take the driver into custody for further investigation.[11]

However, turning to the claim of false imprisonment, the facts are undisputed that when Officer Hackett arrived at the police station, he identified Plaintiff Cox as the person he had seen driving the stolen Nissan, which directly led to his imprisonment.  Plaintiff claims that this identification was objectively unreasonable, which if supported by facts that would create an issue of material fact, would require submission of the claim to the jury.

**b.      Whether a Triable Issue of Fact Exists Regarding the**

---

[11]Moreover, we note that Patton was the *only* case submitted by Plaintiff which even obliquely suggests that someone other than the arresting officer (or a non-arresting officer directly involved in the arrest of a plaintiff) could be sued for false arrest, and an independent review of caselaw by this court only revealed Mack.  Patton certainly did not squarely address the issue, is almost three-quarters of a century old, and in any event, as a Pennsylvania state case discussing a state false arrest tort claim, is not controlling authority as to this court's disposition of Plaintiff's federal, constitutional false arrest claim.  Mack, a district court case from another jurisdiction, is similarly not controlling and is also distinguishable in that there, the officer's conduct actually resulted in the plaintiff's arrest.

## Objective Reasonableness of Officer Hackett's  Identification

The Third Circuit has generally viewed "the question of probable cause in a section 1983 damage suit [as] one for the jury." Montgomery v. DeSimone, 159 F.3d 120, 124 (3d Cir. 1998); Losch v. Borough of Parkesburg, Pennsylvania, 726 F.2d 903 (3d Cir. 1984); Deary v. Three Un-Named Police Officers, 746 F.2d 185, 190 (3d Cir. 1984); Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir. 1978).  However, "a district court may conclude in the appropriate case, however, that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding," particularly where there are no credibility issues at issue. See Marasco, 318 F.3d at 514 (finding officers had probable cause for arrest); Sherwood v. Mulvihill, 113 F.3d 396, 402 (3d Cir. 1997) (holding probable cause existed where affidavit detailed tip from a reliable informant corroborated by an undercover narcotics purchase, even where affidavit was rewritten to correct for misrepresentations and omissions).  That is, summary judgment is appropriate if, taking all of Cox' allegations as true and resolving all inferences in his favor, a reasonable jury could not find that Officer Hackett could not have reasonably believed that Cox drove away in the stolen silver Nissan. Montgomery, 159 F.3d at 124.  Credible, "material" evidence offered by Cox contrary to the Defendants' version of events will defeat the summary judgment motion.

At oral argument and in his briefs, Cox argued that under what he labels "adverse" circumstances, it was impossible for Officer Hackett to identify him positively.  He offered the following evidence, almost all of which came from Officer Hackett's deposition, in support of his contention that the Hackett identification was "objectively unreasonable," or at minimum, that there is a triable issue of fact as to whether Officer Hackett had probable cause for the

14

identification that lead to Cox' arrest and detention.[12]  He states that Hackett's view of the stolen

Nissan exiting the complex would have been obscured because the Nissan was traveling at least

15 m.p.h., and Officer Hackett had to look through two car windows (his own and the Nissan's)

and past the passenger to see the Nissan's driver.  Deft.'s Ex. F, Dep. of Officer Hackett, at 35:9,

36:16-37:13.  Cox also states this identification would have taken place at approximately 7:15

p.m., and therefore dusk, on April 9, 2003.[13]  He also states that given the driver's rate of speed

and Hackett's statement that he observed the Nissan cover a distance of fifty feet, Id. at 37:17-19,

the entire encounter could not have lasted more than a few seconds, not long enough for a

reasonable officer to obtain an adequate view.  Thus, he asserts the identification, which lead to

his arrest and imprisonment, was objectively unreasonable and without probable cause.

On the other hand, much of the same evidence could easily support a finding of probable

cause.  Plaintiff concedes that he was at the apartment complex on the night in question and that

---

[12]The Defendants do not explain (and may not know) why Plaintiff Cox would have driven into the apartment complex in a green Jeep and a few minutes later exited in the stolen Nissan, or why if this were true, the Jeep was no longer in the parking lot shortly after the car/foot chase.  Under the facts of this case, this does not make much sense; however, Officer Hackett's identification of Plaintiff Cox, as discussed in detail below, and as testified to by Officer Hackett, is strong and unshaken, particularly as set forth in Officer Hackett's deposition.  Deft.'s Ex. E, Dep. of Cox, at 35-38, 40-41 and 50-51.  Plaintiff asked the Court to review a DVD re-enactment, but the Court does not believe that it should decide a summary judgment motion on a re-enactment video.  Instead, our review must be confined to the facts of record.

[13]In his deposition, Defendant Hackett does not identify the time of the incident in question.  However, he does indicate it was just minutes after he first saw Cox in the Jeep, and Cox testified that this was between 7:00 and 7:15 p.m.  Deft.'s Ex. E, Dep. of Cox, at 85:3-4.  Although Plaintiff fails to provide evidence that it was dusk, the Court will take judicial notice of the fact that, according to the U.S. Naval Observatory's Astronomical Applications Department, the sun set on April 9, 2003 at 7:33 p.m. in Delaware County, Pennsylvania, where Woodlyn is located.  See http://aa.usno.navy.mil/data/docs/RS_OneDay.html.  Therefore, it would have been dusk at approximately 7:15 p.m.

the officer had the opportunity to directly observe Cox' face as he entered the parking lot in his green Jeep.  Id. at 26:24; Deft.'s Ex. E, Dep. of Cox, at 84-85, 89.  When Cox entered the complex, he passed by Officer Hackett's vehicle very slowly, only about six feet away, and because both vehicles were SUVs, they were about the same height.  Deft.'s Ex. F, Dep. of Officer Hackett, at 31:4-25.  Officer Hackett took note of several physical characteristics, including that the driver was African-American, male, in his later 30's or early 40's, and wearing a silky black "doo-rag" headband.  Id. at 32:7-12.  Mere minutes passed before the stolen silver Nissan passed by as it exited the complex.  Id. at 35:3-4.  Hackett states he had the opportunity to "look straight at the driver" through his clean front windshield as the suspect drove a distance of approximately fifty feet and got as close at fifteen feet away.  Id. at 36-37, 38:14.  Hackett determined the driver was the same man he had just seen in the Jeep.  Id.  Moreover, during the foot chase, Hackett states that the suspect looked straight at him twice more: once as he exited the vehicle and again as he was being chased by Officer Hackett.  Id. at 40, 41:17.[14]  When the officer came to the police station two days later, upon seeing Plaintiff in the cell which he occupied, he positively identified him.  Id. at 49-50.  Finally, Defendant Hackett was a seasoned officer with nineteen years on the job at the time of this incident, with some training in surveillance and witness identification, and there is no evidence offered that he is not a reliable eyewitness.  Id. at 5:17, 9:6-10.

_____

[14]At oral argument, Plaintiff questioned Officer Hackett's assertion that he saw Plaintiff's face during the foot chase.  He argued that Hackett asserted this for the first time at his deposition, and that he did not testify to this at the preliminary hearing and it does not appear in the police records.  Pl.'s Resp. to Deft. Statement of Undisputed Facts at ¶ 2.  While not entirely clear, it seems Plaintiff suggests that Officer Hackett is lying about this second and third citing of the suspect's face.

Cox has not proffered affirmative evidence raising questions of material fact with regard to Officer Hackett's account.  Specifically, none of the facts offered by Cox tend to discredit the essential portion of Hackett's account: that he clearly observed the driver of the stolen Nissan when it exited the parking lot, who he reasonably took to be Plaintiff Cox.  Moreover, Cox himself testified that when in court for the preliminary hearing on the criminal case, Cox immediately recognized Officer Hackett as the same person he had seen on April 9, 2003 when he entered the apartment complex in his Jeep, Deft.'s Ex. E, Dep. of Cox, at 89:15-17, dispelling at least in part the notion that the conditions were too adverse to make a positive identification. This case is an exception to the Third Circuit's general view that "the question of probable cause in a section 1983 damage suit is one for the jury," Montgomery, 159 F.3d at 124.

In this case, the undisputed facts lead the Court to determine that Officer Hackett had probable cause and that the identification of Plaintiff Cox as the person driving both the green Jeep and the stolen Nissan was objectively reasonable.  To be sure, there are issues of fact in this case, but these issues fundamentally go to the relatively minor circumstances underlying Officer Hackett's observations, not to "material" facts.  F.R. Civ. P. 56(c) (only if there are no "no genuine issue as to any material fact" is the moving party entitled to a judgment as a matter of law).  However, Plaintiff has presented no specific facts that could warrant a jury to conclude Officer Hackett acted unreasonably.  Plaintiff has no specific facts that Officer Hackett's detailed deposition testimony showed that his conduct was objectively unreasonable and Plaintiff's own deposition testimony does not demonstrate this either.

    **c.**        **Qualified Immunity**

        **i.**        **Qualified Immunity: Analytical Framework**

Defendant Hackett next contends that even if there is a triable issue as to whether he lacked probable cause in identifying Plaintiff, he can avoid section 1983 liability by virtue of qualified immunity if he can demonstrate his good faith in making the arrests.  We agree and alternatively hold that Officer Hackett is entitled to qualified immunity as to Count I.

The doctrine of qualified immunity states that public officials performing discretionary functions generally are shielded not only from liability for civil damages, but immunity from trial, insofar as their conduct does not violate clearly established statutory or constitutional rights, of which a reasonable person would have been aware.  Harlow v Fitzgerald, 457 U.S. 800 (1982).

In Curly v. Klem, 298 F.3d 271 (3d Cir. 2002), decided shortly after the Supreme Court's decision in Saucier v. Katz, 533 U.S. 194 (2001), the Third Circuit discussed the two-step inquiry that courts must undertake in determining whether an officer is entitled to qualified immunity. First, the court must decide whether the facts alleged show the officer's conduct violated a constitutional right.  Id. at 277 (citing Saucier, 533 U.S. at 201-02).  If the facts, when viewed in the light most favorable to the plaintiff, do not show that the officer violated a constitutional right, then plaintiff's § 1983 claim must fail.  Id.  Second, the court must ask whether the right was clearly established at the time he acted.  "Clearly established" in this context means "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id.  Moreover, [as the Court in Saucier] noted, "this inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition.  If a court concludes that an officer's conduct did violate a clearly established constitutional right, then it must deny him the protection afforded by qualified immunity."  Id. (citing Saucier, 533 U.S. at 201-02).

18

The Supreme Court has repeatedly stressed the importance of resolving qualified immunity at the earliest stage of the litigation to spare public officials of the burdens of litigation and trial.  Curly, 298 F.3d at 277 (citing Saucier, 121 S.Ct. at 2156; Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam); Anderson v. Creighton, 483 U.S. 635, 646, n. 6 (1987); Harlow, 457 U.S. at 818)).  For example, in Hunter, the Court repeated that qualified immunity means immunity from suit rather than a mere defense to liability, and that qualified immunity ordinarily should be decided by the court long before trial.  In that case, an issue arose before the Ninth Circuit, on the appeal from the defendant's conviction, as to whether certain secret service agents were entitled to immunity on the claim that they had arrested the defendant without probable cause.  The Supreme Court criticized the Ninth Circuit for holding that "[w]hether a reasonable officer could have believed he had probable cause is a question for the trier of fact, and summary judgment . . . based on lack of probable cause is proper only if there is only one reasonable conclusion a jury could reach."  Hunter, 502 U.S. 228 (citing 903 F.2d at 721).  The Court held:

> This statement is wrong for two reasons.  First, it routinely places the question of immunity in the hands of the jury [when] immunity ordinarily should be decided by the court long before trial.  Second, the court should ask whether the agents acted reasonably under settled law and the circumstances, not whether another reasonable or more reasonable interpretation of the events can be constructed five years after the fact.

Id.  Therefore, an officer who reasonably, but mistakenly, concluded that probable cause is present is entitled to qualified immunity.

However, the Third Circuit itself has noted tension between some of the broad statements concerning qualified immunity and its application in Third Circuit jurisprudence.  In Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997), the circuit court noted that although the Supreme Court in

Hunter directed that qualified immunity is a question of law to be decided by the court at the earliest stage of the litigation possible, and some of its cases had properly followed that approach, e.g. Parkhurst v. Trapp, 77 F.3d 707, 713 (3d Cir. 1996); Rogers v. Powell, 120 F.3d 446, 454 (3d Cir. 1997), the Third Circuit has not always followed this instruction.  Sharrar, 128 F.3d at 827.  However, it squarely held that both the questions of "clearly established law" and whether the actions of the officers were "objectively reasonable" were issues for the court, and only if the historical facts material to the latter were in dispute will there be an issue for the jury. Id. at 828.  Accordingly, consistent with prior precedent and Hunter, the Sharrar court held that officers who conducted a protective sweep of an arrestee's home following arrests were entitled to qualified immunity.  Id. at 831.

Several years later in Curley, the Third Circuit confronted qualified immunity again. 298 F.3d 271. There, the plaintiff, a port authority police officer, claimed the defendant, a state trooper, used excessive force by shooting him when he mistook the plaintiff for a criminal suspect.  While acknowledging that Sharrar dictated that qualified immunity was generally not a jury question, the Curley court held that genuine issues of material fact precluded summary judgment on the issue of the defendant trooper's qualified immunity, finding two disputed historical facts bore directly on the question of what information was available to the trooper at the time of the shooting. Id. at 279, 281.

The Third Circuit also ruled that disputed facts underlying a claim of qualified immunity should be submitted to a jury in Monteiro v. City of Elizabeth, 436 F.3d 397 (3d Cir. 2006), in which the trial judge had denied summary judgment to the defendant for the basis of qualified immunity because of disputed issues of fact.  After a trial, the jury had returned a verdict for the

plaintiff which was affirmed on appeal, as the jury verdict was based on sufficient evidence.

### ii.    Qualified Immunity: Analysis

With these precedents in mind, the Court finds that in the present case, the evidence of record warrants a grant of qualified immunity in favor of Officer Hackett.  Regarding the first prong, there is no doubt that arrest without probable cause is contrary to the Fourth Amendment.  However, as discussed above, Plaintiff's assertion that Officer Hackett lacked probable cause to make the identification has already been rejected.  Even when the facts are viewed in the light most favorable to Cox, they do not show that Officer Hackett violated Cox' Fourth Amendment rights.  Thus, any additional discussion of qualified immunity is rendered unnecessary and we need not address the "clearly established" prong.  Curly, 298 F.3d at 277 (citing Saucier, 533 U.S. at 201-02).

However, even if the Court were to conclude, alternatively, that Officer Hackett did not have probable cause to identify Cox as the person who had been driving the Nissan, the Court would nonetheless find qualified immunity because Officer Hackett's accusation was, in the light of the facts as he confronted them, reasonable under all the circumstances.  See Hunter, 502 U.S. at 228; Curley, 298 F.3d at 282.  It is clear that motive and intent, albeit not relevant as to probable cause, can play a role in an analysis of qualified immunity.  See Monteiro, 436 F.3d at 405.  The record discloses no evidence that Officer Hackett had any improper or illegal motive towards Plaintiff and at oral argument, Plaintiff's counsel specifically disclaimed any reliance on racial discrimination.  Given that the prosecution was eventually dropped, and assuming Officer Hackett mistakenly identified Plaintiff as having operated the stolen Nissan, the evidence in this case rises no higher than mistaken identity.  The fact that Plaintiff Cox was arrested and

eventually imprisoned for a period of time, possibly because of mistaken identity would indeed be unfortunate, but does not automatically create a jury issue about a civil rights allegation when the facts of the case show an observance of appropriate police procedures for identifying a citizen driving a stolen car.

Officer Hackett's detailed testimony at his deposition of his undisputed chance to observe the driver of the Nissan, both while he was driving the Nissan and also when he started fleeing from Officer Hackett, and his seeing Plaintiff Cox two days later and immediately identifying Plaintiff Cox as the person who drove the Nissan, warrants granting qualified immunity.

In <u>DeBellis v. Kulp</u>, 166 F. Supp. 2d 255 (E.D. Pa. 2001), Judge Van Antwerpen of this court (presently a Third Circuit judge) granted summary judgment for defendant police officers in a civil rights damages action for false arrest.  After finding that the officers had probable cause to arrest the plaintiff, Judge Van Antwerpen went on to consider the claim of qualified immunity in the alternative, in what the court characterized as a case of mistaken identity, and held that qualified immunity would be proper.  <u>Id.</u> at 270-71.  <u>See also</u> <u>Davis v. McKenna</u>, 2006 WL 1453119, *3 (W.D. Pa. 2006) (Lancaster, J.) (finding that qualified immunity was available "to an officer who acts on an objectively reasonable belief that there is a valid warrant," and granting summary judgment to police officers who secured an arrest warrant based on mistaken identity after the plaintiff had spent two weeks in jail).  Although there was no warrant in this case, these principles also apply to an arrest without a warrant.

The Court has reviewed above a number of factual disputes in the accounts of the incident by Plaintiff Cox and Officer Hackett.  These discrepancies go only to whether there was sufficient opportunity for Officer Hackett, having indisputably seen Plaintiff Cox driving the

22

green Jeep, to similarly conclude that Plaintiff Cox was also driving the stolen Nissan.  However,

there is no dispute that Plaintiff Cox was driving the green Jeep and that he was observed doing

so by Officer Hackett.  The Court concludes that, despite some Third Circuit case law rejecting

qualified immunity when there are factual disputes, these precedents do not extend to the type of

factual dispute in this case.

Basically, Plaintiff's asserted factual disputes relate to the fringes surrounding Officer

Hackett's identifications, and if these types of disputes require a jury trial, then the doctrine of

qualified immunity will hardly ever allow a trial court to dismiss a Fourth Amendment case on

summary judgment, because every plaintiff can dispute the arresting officer's credibility and

easily raise some factual issues about every situation.  Routinely sending the question of qualified

immunity to the jury was squarely rejected by the Supreme Court in Hunter, 502 U.S. at 228, and

both the Supreme Court and Third Circuit have held that qualified immunity must be analyzed

from the point of view of a reasonable police officer *under the circumstances* confronted by the

defendant officer, and doing so in this case warrants summary judgment for Defendants.

## 2.    State Law Claims (Count IV)

Defendants contend Plaintiff's state law claims are barred by the statute of limitations, by

immunity provisions set forth in the PSTCA, are unspecified and erroneously name another

officer, and in any event, are meritless.  Plaintiff counters that the state law claims asserted in

Count IV "relate back" to the original complaint pursuant to F.R. Civ. P. 15(c) and thus do not

violate the statute of limitations.  Moreover, he argues that the immunity provisions of the

PSTCA are inapplicable, as section 8550 of the Act specifically denies immunity to employees if

their misconduct is malicious and/or willful.  Finally, he contends Count IV broadly, but

adequately, pleads his state law claims.

### a.     Unspecified Claims and Defects in Pleading

Defendants point to several defects in Count IV, including: (1) the main paragraph alleges that an Officer William Sweeney actually committed the tortious acts, and (2) Plaintiff's failure to enunciate which state torts he wishes to pursue.

As Defendants properly note, while Count IV is asserted against Officer Hackett and it states the "actions of Defendant, Officer . . . Hackett . . . were committed with actual malice and/or willful misconduct," Amended Compl. at ¶ 59, the operative paragraph alleges that an Officer *William Sweeney*, who is not a named Defendant in this case, actually negligently, recklessly and intentionally arrested and detained Plaintiff.  Id. at ¶ 58.  At oral argument, Plaintiff indicated this was a typographical error, and Defendants did not object to Plaintiff amending his complaint to substitute Officer Hackett for Officer Sweeney in paragraph 58. Accordingly, the Court will permit this change.

Further, at oral argument, Plaintiff clarified that the only state law tort claims he was pursuing were false arrest, false imprisonment and battery.  Although the Amended Complaint was broadly worded, we find it sufficiently encompassed these torts.

### b.     Statute of Limitations

Pennsylvania's statute of limitations requires all claims for "injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct" to be brought within a two-year time period. 42 Pa. Cons. Stat. §§ 5524; Lake v. Arnold, 232 F.3d 360, 369 (3d Cir. 2000).  As stated above, the incident underlying this civil rights action took place on April 11, 2003.  The original complaint — which only asserted state law claims against Defendant

24

Township and not Officer Hackett — was filed in the Delaware County Court of Common Pleas on April 7, 2005, four days before the statute of limitations expired.  Subsequently, Plaintiff filed an Amended Complaint on June 23, 2005 in response to this Court's June 16, 2005 Order regarding Defendant's Motion to Dismiss, which allowed Plaintiff to file an Amended Complaint.  The Amended Complaint for the first time asserted the state tort claims against Defendant Hackett.

The two-year statute of limitations had clearly expired by June 23, 2005.  Therefore, Plaintiff can only properly add state law claims against Officer Hackett if the "relation back" provisions of F.R. Civ. P. 15(c) are met.  Rule 15(c), which governs the relation back of a complaint, provides in pertinent part:

> (c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . .

In this case, Cox has named Defendant Hackett as a party since the beginning of this lawsuit, thus having provided proper service and ample notice of the case.  The state law claims asserted in Count IV of the Amended Complaint unquestioningly arise out of the same transaction which served as the basis of Cox' other claim against Hackett.  Moreover, the original complaint asserted state law claims, albeit against the Defendant Township, and this Court's June 16, 2005 specifically allowed Plaintiff to amend his state tort count to add Officer Hackett.  We can perceive no possible prejudice to him by allowing Plaintiff to do so.  Thus, we conclude that the requirements of F.R. Civ. P. 15(c)(2) are satisfied.

### c.      Pennsylvania Political Subdivision Tort Claims Act

Ultimately, however, the immunity afforded under the PSTCA is fatal to Plaintiff's state law claims.  Under the PSTCA, local agencies, such as townships, and their employees are generally immune from tort liability,[15] unless the alleged misconduct fits into one of a few narrow categories enumerated in the statute.[16]  42 Pa. Cons. Stat. §§ 8541-42, 8545-46.  See also Mascaro v. Youth Study Center, 523 A.2d 1118, 1123 (Pa. 1987) (discussing PSTCA immunity standard); Casey v. Geiger, 499 A.2d 606, 609 (Pa. Super. 1985) (discussing PSTCA in depth).  Neither party asserts that any of the eight  PSTCA negligence theory exceptions apply to Plaintiff's state law claims asserted in Count IV.

However, under 42 Pa. Cons. Stat. § 8550, the immunity provisions of the PSTCA can be avoided and local agency employees can be held liable for intentional conduct including a crime, actual fraud, actual malice or willful misconduct.  Willful misconduct has been construed by the

---

[15]Relating to governmental immunity generally, the Act states, in pertinent part: "Except as otherwise provided in the subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency *or an employee thereof* or any other person." 42 Pa. Cons. Stat. § 8541 (emphasis added).  This general immunity extends to specific employees insofar as the alleged injury is "caused by acts of the employee which are within the scope of his office or duties." Id. at § 8545.  Further, as an employee of a local agency, Defendant Hackett would have the benefit of the defense of "official immunity," enumerated in § 8546, which provides in relevant part: "In any action brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee, the employee may assert on his own behalf, or the local agency may assert on his behalf: (1) Defenses which are available at common law to the employee; (2) The defense that the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law." Id. at § 8546; Casey v. Geiger, 499 A.2d 606, 609, n.4 (Pa. Super. 1985).

[16]These are: "(1) Vehicle liability. - The operation of any motor vehicle in the possession or control of the local agency . . .  (2) Care, custody or control of personal property . . .  (3) Real property . . .  (4) Trees, traffic controls and street lighting . . .  (5) Utility service facilities . . .  (6) Streets . . .  (7) Sidewalks . . .  (8) Care, custody or control of animals."  42 Pa. Cons. Stat. § 8542(b).

courts to be "synonymous with the term intentional tort." <u>Setchko v. Twp. of Lower Southampton</u>, 2001 WL 229625, *4 (E.D. Pa. 2001) (internal citations omitted).  However, Pennsylvania Supreme Court has held that a different standard applies to police conduct than to that of other municipal employees, and that the police officer's "willful misconduct" must be established *in addition* to the elements of an intentional tort.  <u>Renk v. Pittsburth</u>, 641 A.2d 289, 293 (Pa. 1994) (italics added).  That is, "the conduct of a police officer will only constitute 'willful misconduct' if the officer committed 'misconduct which the perpetrator recognized as misconduct and which was carried out with the intention of achieving exactly that wrongful purpose.'"  <u>Waldon v. Borough of Upper Darby</u>, 77 F. Supp. 2d 655, 658 (E.D. Pa. 1999) (citing <u>In re City of Philadelphia Litigation</u>, 938 F. Supp. 1264, 1273 (E.D. Pa. 1996)).

Plaintiff asserts that the immunity provisions of the PSTCA do not apply, as Defendant Hackett plainly acted with malice when he unreasonably and falsely identified Plaintiff.  At minimum, he argues motivation is *per se* a question of disputed fact.  We disagree.  Quite simply, Plaintiff has proffered no facts supporting his contention that Officer Hackett willfully identified him falsely or evinced any malice toward him whatsoever.  He admits that any reasons he would have to explain Officer Hackett's allegedly malicious conduct would be "speculat[ive]," and at oral argument, specifically disclaimed any reliance on racial discrimination.  Pl.'s Resp. to Deft's M. for Summary Judgment, at 10.  Certainly, he has not established a triable issue of fact as to whether Defendant Hackett acted "with the intention of achieving exactly that wrongful purpose."  <u>Waldon</u>, 77 F. Supp. 2d at 658.  Therefore we also

grant summary judgment as to Count IV.[17]

## VI.      Conclusion

_____Accordingly, Defendant's motion for summary judgment will be granted.


An appropriate order follows.

---

[17]Further, to the extent that Plaintiff asserts he alleges battery against Officer Hackett, we agree with Defendants that there is simply nothing that would support this claim.  The cases cited by Plaintiff in his Supplemental Submission in Defense of the Motion for Summary Judgment are inapposite, as they merely reiterate the black letter law that battery must involve either a touching or an intentional action that directly causes a touching of the plaintiff.  Simply stated, Officer Hackett was not involved in the arrest of Plaintiff, and there is nothing in the record to suggest he never touched, or caused a touching — offensive or otherwise — of Plaintiff Cox. Summary judgment is independently warranted as to the battery allegation on this basis.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MYRON COX | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OFFICER JOSEPH THOMAS HACKETT, and | : | |
| TOWNSHIP OF RIDLEY | : | No.    05-CV-2260 |

**<u>ORDER</u>**

AND NOW, this        day of July 2006, based on the foregoing memorandum, it is hereby

ORDERED that:

i.       Defendants' Motion to for Summary Judgment (Doc. No. 30) is GRANTED

ii.      The Amended Complaint is Dismissed; and

iii.     The Clerk shall close this case.


BY THE COURT:

**/s/ Michael M. Baylson**

_____

Michael M. Baylson, U.S.D.J.